UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANA C.,

                              Plaintiff,

              v.

FRANK J. BISIGNANO,[1] Commissioner of
Social Security,

                          Defendant.

_____

**DECISION**
**and**
**ORDER**

**24-CV-6011LGF**
(**consent**)

APPEARANCES:        OLINSKY LAW GROUP
                              Attorneys for Plaintiff
                              HOWARD D. OLINSKI, of Counsel
                              250 South Clinton Street
                              Suite 210
                              Syracuse, New York  13202

                              MICHAEL DiGIACOMO
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York  14202
                                  and
                              JOHANNY SANTANA, and
                              JOHN THOMAS MOLINARO
                              Special Assistant United States Attorneys, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              6401 Security Boulevard
                              Suite 1520 Annex
                              Baltimore, Maryland  21235

## JURISDICTION

On October 2, 2025, the parties to this action, consented pursuant to 28 U.S.C. §

636(c) to proceed before the undersigned.  (Dkt. 18).  The matter is presently before the

---

[1] Frank J. Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

court on motions for judgment on the pleadings filed by Plaintiff on May 3, 2024 (Dkt. No. 10),[2] and by Defendant on July 17, 2024 (Dkt. No. 16).


## BACKGROUND

Plaintiff Ana C. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and § 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA"), on April 9, 2021, for Supplemental Security Income under Title XVI of the Act ("SSI" or "disability benefits"). AR at 274-77.[3]  Plaintiff initially alleged she became disabled on February 6, 2021 ("disability onset date" or "DOD"), based on leg pain/discomfort (both), and hand pain/discomfort (both), AR at 316, 319, 327, 363, later amending her DOD to April 9, 2021.  AR at 44.  Plaintiff's application initially was denied July 17, 2021, AR at 56-68, and upon reconsideration on April 25, 2022.  AR at 69-83.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ"), AR at 122-24, and on December 6, 2022, an administrative hearing was held via telephone before ALJ Joshua Menard ("the ALJ") ("administrative hearing").  AR at 39-54.  Appearing and testifying at the first hearing were Plaintiff, represented by Kyle Buss, Esq., and vocational expert ("VE") Kathleen Doehla.  Because Plaintiff speaks only Spanish, she was assisted in testifying by Spanish interpreter "Esperanza."[4]

---

[2] Plaintiff did not file a separate motion document, but only Plaintiff's Brief (Dkt. 10) in support of such a motion.

[3] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed in by Defendant on February 2, 2024 (Dkt. 7).

[4] No last name for "Esperanza" is in the record.

On January 26, 2023, the ALJ issued a decision denying Plaintiff's claim ("the ALJ's decision"), AR at 16-38, which Plaintiff appealed to the Appeals Council.  AR at 271-73.  On November 8, 2023, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision at that time.  AR at 1-8.  On January 3, 2024, Plaintiff commenced this action seeking judicial review of the ALJ's decision.

On May 3, 2024, Plaintiff filed "Plaintiff's Brief" (Dkt. 10) which the court treats as both a motion for judgment on the pleadings ("Plaintiffs' Motion"), and as a memorandum of law in support of Plaintiff's motion ("Plaintiff's Memorandum").  On July 17, 2024, Defendant filed a motion for judgment on the pleadings (Dkt. 16) ("Defendant's Motion"), attaching the Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on the Pleadings (Dkt. 16-1) ("Defendant's Memorandum").  On July 31, 2024, Plaintiff filed Plaintiff's Reply (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED and the Clerk of the Court is DIRECTED to CLOSE the file.


## **FACTS**[5]

Plaintiff Ana C. ("Plaintiff"), born on December 9, 1968, was 52 years old as of her alleged DOD of April 9, 2021, the date of her disability benefits application,[6] and 54

---

[5] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

[6] Because Plaintiff is eligible for SSI benefits only from the date of her application, at the administrative hearing, Plaintiff amended her DOD from February 6, 2021 to April 9, 2021, the date of her disability benefits application.  AR at 44.  *See* 20 C.F.R. § 416.330(b) ("If you meet all the requirements for

years old as of January 31, 2023, the date of the ALJ's decision.  AR at 34, 274, 316,

319.  Plaintiff attended school in Puerto Rico, completed the ninth grade in regular

classes, but did not graduate, has not obtained a GED, and did not complete any type

of specialized job training, trade, or vocational school.  AR at 364.  Plaintiff lives by

herself in an apartment, and takes care of her dog and her grandchildren.  AR at 336-37

Plaintiff does not drive but relies on public transportation, is able to go out by herself,

and goes out twice a day.  AR at 339.  Plaintiff's past relevant work ("PRW") includes

employment as a cleaner/housekeeper, a baby sitter at a day care, and as a temporary

worker in maintenance.  AR at 307, 348, 364.

It is undisputed that Plaintiff has suffered from leg pain and hand pain.  Plaintiff

receives primary care at Anthony Jordan Health Center ("AJHC") in Rochester, New

York where she regularly sees Physician Assistant ("PA") Christina Humbert ("PA

Humbert").  AR at 531-49, 556-97.

In 2016, Plaintiff underwent left hand surgery for lacerated tendons.  AR at 531.[7]

On May 13, 2017, Plaintiff presented to the emergency department at University of

Rochester Medical Center ("URMC") with complaints of right arm swelling and bruising.

AR at 414-24.  It was noted Plaintiff recently had surgery on her left hand, *id*. at 414, but

diagnostic imaging was normal.  *Id*. at 417-24.  A May 13, 2017 venous ultrasound of

Plaintiff's right upper extremity showed no evidence of venous thrombosis.  AR at 417.

---

eligibility while your application is in effect, the earliest month for which we can pay you benefits is the
month following the month that you first meet all the requirements.").

[7] No medical records for Plaintiff's hand surgery are in the record.

On July 14, 2020, X-rays of Plaintiff's lumbar spine revealed mild osteoarthritic changes at L5-S1.  AR at 427.  On July 29, 2020, X-rays of Plaintiff's left hip showed mild joint space narrowing of the hips.  AR at 433.

On August 28, 2020, Plaintiff again presented to URMC with complaints that her "legs are heavy, tired, fatigued, and aching throughout the afternoon."  AR at 437. Examination revealed varicosities of the left leg, anterior and medial thigh, and medial ankle.  AR at 438.  That same day, venous varicose competency ultrasound showed venous valvular incompetence in the common femoral and great saphenous veins (located in the thighs).  AR at 435.

On April 20, 2021, an MRI of Plaintiff's left knee showed possible mild sprain of the medial collateral ligament (a key stabilizer on the inner knee connecting the femur to the tibia), tear of the body and posterior horn of the medial meniscus (damage to the inner, back portion of the knee cartilage), large chondral defect of the left tibial plateau (damaged articular cartilage on the shinbone's knee surface, often causing pain, instability, and potential swelling), mild degenerative changes in the medial (inner femur and fibia) and patellofemoral compartments (joint between kneecap and femur), small suprapatellar effusion (accumulation of excess fluid in the suprapatellar bursa (pouch), located just above the knee cap), and small Baker's cyst (fluid-filled swelling behind the knee).  AR at 448.  On October 21, 2021, Plaintiff underwent left knee arthroscopy surgery ("knee surgery").[8]  AR at 531.

---

[8] No medical records for Plaintiff's left knee surgery are in the record.

An X-ray of Plaintiff's left hand taken March 31, 2022 showed no acute fracture or dislocation.  AR at 555.

In connection with her disability benefits application, Plaintiff underwent two internal medicine examinations by consultative physician Harbinder Toor, M.D. ("Dr. Toor"), for which Dr. Toor issued medical opinions including on June 4, 2021, AR at 524-27 ("first consultative examination") ("Dr. Toor's first medical source statement"), and on March 31, 2022, *id*. at 551-55 ("second consultative examination") (Dr. Toor's second medical source statement") (together, "Dr. Toor's opinions").  In both of Dr. Toor's opinions, Plaintiff is assessed with moderate to marked limitations for standing, walking, squatting, bending, lifting, and carrying, moderate limitation for sitting for a prolonged time, and mild to moderate limitations for fine motor activity with the left hand. AR at 527, 554.  Plaintiff's medical records were reviewed by State agency medical consultants S. Sonthineni, M.D. ("Dr. Sonthineni"), on July 16, 2021 (AR at 61-67), and by S. Putcha, M.D. ("Dr. Putcha"), on April 14, 2022 (AR at 77-84).

## DISCUSSION

### 1.    Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[9] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

---

[9] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

## 2.    Disability Determination

Although Plaintiff seeks only SSI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§

8

404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.    Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful employment ("SGA"), since April 9, 2021, the amended DOD and application date.  AR at 24.  The ALJ found Plaintiff has the severe impairments of degenerative disc disease, varicose veins, osteoarthritis of the left hip and knees, and obesity, *id*., and non-severe impairments of a left hand injury/finger, and hypertension, as well as medically determinable mental impairments of depression and anxiety, *id*. at 24-27, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1.

*Id.* at 28.  The ALJ further determined Plaintiff retains the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b),[10] with limitations including that she cannot stand or walk for more than four hours in a typical workday, can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl.  *Id*. at 28-33.  Plaintiff has no PRW, but given her age, limited education, and RFC, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a mail clerk, office helper, and folder.  *Id*. at 33-34.  Accordingly, the ALJ found Plaintiff not disabled as defined in the Act since April 9, 2021, the date the application was filed.  *Id*. at 34.

In support of her motion, Plaintiff argues that the ALJ erred in evaluating Dr. Toor's opinions by failing to articulate the basis for finding the opinions unpersuasive particularly with regard to the factors of supportability and consistency in accordance with 20 C.F.R. § 416.920(a) and (b)(1), Plaintiff's Memorandum at 6-10, that such error is not harmless because Dr. Toor's opinions establish Plaintiff is capable of performing less than the full range of sedentary work, [11] *id*. at 9-10, and the ALJ's discussion of Plaintiff's subjective complaints is flawed because it is solely dependent on objective criteria.  *Id*. at 10-11.  Defendant argues the RFC formulated by the ALJ is supported by

---

[10] The exertional requirements for light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b).

[11] If Plaintiff is limited to less than the full range of sedentary work, she would be considered disabled according to the SSA's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpt. P, Appendix 2, Rule 201.10.

substantial evidence in the record, Defendant's Memorandum at 7-11, and the ALJ reasonably found Dr. Toor's opinions partially persuasive and properly assessed Plaintiff's RFC based on the record as a whole. *Id*. at 12-25. In reply, Plaintiff again argues the ALJ failed to articulate his consideration of the supportability and consistency of Dr. Toor's opinions in finding such opinions only partially persuasive and in formulating the RFC. Plaintiff's Reply at 1-4.

Preliminarily, the court discusses Dr. Toor's opinions which the ALJ found "partially persuasive." At the first consultative examination with Dr. Toor on June 4, 2021, Plaintiff wore a brace on her left knee, she had an abnormal gait, "limping to the left side," difficulty walking on heels and toes, normal stance, difficulty rising from a chair, slight difficulty changing for the examination table, and slightly blurred vision in her left eye from an old injury. AR at 525. Plaintiff had a "scar from old injury in the fifth finger of the left hand," *id*., reduced range of motion ("ROM") of the lumbar spine, full ROM of shoulders, elbows, forearms, and wrists bilaterally, left knee had reduced flexion and extension at 140 degrees with tenderness, stiffness, and swelling, right knee was normal with full ROM, slight tenderness, ankles were normal with full ROM, but Plaintiff declined straight leg raising in both seated and supine positions, as well as hip movements. *Id*. at 526. Plaintiff had mild varicose veins in her legs, more marked on the left than the right, and hand and finger dexterity was not intact on the left with mild to moderate difficulty performing fine motor activities. *Id*. Dr. Toor diagnosed history of chronic knee pain, more marked on left than right, history of chronic lower back pain, history of varicose veins in the legs, history of injury in the left hand/fifth finger, and history of injury over the left eye. *Id*. at 526-27. Plaintiff's prognosis was "guarded" and

Dr. Toor's first medical source statement included that Plaintiff "has moderate to marked limitations standing, walking, squatting, bending, lifting and carrying.  She has difficulty with balance.  She has moderate limitations sitting a long time. [*sic*] She has mild to moderate limitations doing fine motor activities with the left hand."  *Id*. at 527.

At the second consultative examination with Dr. Toor on March 31, 2022, Dr. Toor's assessment remained largely the same as the first medical source statement with the additional observation of a scar from left knee surgery, *id*. at 552, and Dr. Toor's diagnoses included history of chronic pain/arthritis in the knees, more on the left than right, history of chronic lower back pain, and history of injury in the fifth finger, left hand.  *Id*. at 554.  Prognosis remained "guarded" and Dr. Toor's second medical source statement included that Plaintiff has "moderate to marked limitation standing, walking, squatting, bending, lifting, and carrying," and moderate limitations to "sitting for a long time" and "doing fine motor activity with the left hand."  *Id*.  Plaintiff maintains that the ALJ, in finding both of Dr. Toor's opinions "partially persuasive," AR at 32, discredited Dr. Toor's opinions without properly discussing the supportability and consistency of Dr Toor's opinions with the Administrative Record as a whole.  Plaintiff's Memorandum at 7-10.

For claims filed on or after March 27, 2017, as here, the relevant regulations provide that

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[12]including those from your medical sources.  When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. . . .

20 C.F.R. § 404.1520c(a).

In particular, when more than one medical opinion are provided by medical sources, the Commissioner will consider the medical opinions together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).  When evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 404.1520c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 404.1520c(b)(2), but is not required to articulate consideration of the remaining factors.[13]  *Id. See also Rachel L. v. Bisignano*, 2025 WL 2601904, at * 5 (W.D.N.Y. Sept. 9, 2025) (discussing the ALJ's requirement to articulate how the ALJ "considered the 'supportability' and 'consistency' of a medical source's opinion").

Here, the ALJ observed that in both of Dr. Toor's opinions, Plaintiff was assessed with moderate to marked limitations for standing, walking, squatting, bending, lifting, and carrying, was moderately limited to sitting for a long time, and performing fine motor activities with the left hand.  AR at 32 (referencing AR at 527, 554).  The ALJ sufficiently explained how his observation that these opinions are "vague" and "not entirely supported by other findings" in the record, AR at 32, are supported by and consistent with substantial evidence in the record.

In particular, with regard to Plaintiff's left hand, the ALJ considered that both State agency review physician Dr. Sonthineni and Dr. Putcha found Plaintiff could walk

and stand for four hours, and sit for six hours in an eight-hour workday, which is consistent with light work.  AR at 32.  Insofar as Dr. Sonthineni found Plaintiff's hand/finger dexterity not intact on the left, reduced grip strength on the left at 3/5, causing moderate difficulty with grasping, holding, writing, and buttoning, AR at 64, such that Plaintiff would be limited with regard to jobs requiring constant or frequent use of only her left hand, *id*., Dr. Sonthineni's RFC analysis upon reconsideration was noted to require a new consultative examination with a hand X-ray before a new decision could be made.  AR at 75.  Accordingly, on March 31, 2022, Plaintiff underwent an X-ray of her left hand which showed no evidence of acute fracture, dislocation, or destructive bony lesion, and the joint spaces appeared well-maintained.  *Id*. at 555.  Based on the left hand X-ray, Dr. Pucha found Plaintiff had no manipulative limitations.  AR at 79. The ALJ considered both the left hand X-ray, AR at 32 (referencing AR at 555, 577), and also found that Dr. Pucha's determination that Plaintiff has no manipulative limitations is supported by and consistent with PA Humbert's treatment notes showing Plaintiff with full ROM of both hands on October 24, 2022, *id*. at 33 (referencing AR at 573-74), and a follow-up examination on October 27, 2022 showed a healed wound status post-surgery,[12] *id*. (referencing AR at 586-87).  Accordingly, the ALJ accounted for finding Dr. Toor's opinions "partially persuasive" in rejecting the manipulative limitations Dr. Toor found posed by Plaintiff's left hand.

---

[12] On October 24, 2022, Plaintiff complained to PA Humbert that the surgical wound from her left-hand surgery several years earlier never completely healed and that surgical stitches were "coming up" on her left pinky finger accompanied by pus.  AR at 573.  PA Humbert was able to drain the abscess and Plaintiff was treated for cellulitis of the left hand.  AR at 574-75.  At a follow-up examination on October 27, 2022, PA Humbert reported the wound was healing with no more drainage.  *Id*. at 586-87.

With regard to Plaintiff's ability to stand, walk, squat, bend, lift and carry, which Dr. Toor considered to be moderately to markedly limited, AR at 527, 554, there is caselaw finding such limitations consistent with light work.  *See*, *e.g.*, *Deshantal W. v. Comm'r of Soc. Sec.*, 2024 WL 1157048, at * 14 (W.D.N.Y. Mar. 18, 2024) (finding claimant who was "very limited" in carrying, pushing, and pulling capable of light work); *Melissa F. v. Comm'r of Soc. Sec.*, 2021 WL 3887256, at **4-5 (W.D.N.Y. Aug. 31, 2021) (finding moderate-to-marked limitations with "prolonged standing, walking, squatting, kneeling, climbing, lifting, carrying, pushing, and pulling" were not inconsistent with RFC for light work with additional postural and manipulative limitations); *Maxham v. Comm'r of Soc. Sec.*, 2018 WL 1175210 at * 8 (N.D.N.Y. Mar., 5, 2018) (finding marked limitations in squatting, lifting, and carrying not inconsistent with light work); *Figgins v. Berryhill*, 2017 WL 1184341, at * 13 (W.D.N.Y. Mar. 29, 2017) (finding consultative examiner's opinion that claimant had moderate to severe limitations for standing, walking, squatting, bending and lifting compatible with light work).

Moreover, the ALJ considered other evidence in the record as establishing Plaintiff could perform the exertional requirements for light work including that despite Plaintiff's degenerative disc disease, varicose veins, and osteoarthritis of her knees, X-rays on July 14, 2020 showed mild osteoarthritic changes of Plaintiff's lumbar spine at L5-S1, and on July 29, 2020 showed mild joint space narrowing of Plaintiff's left hip.  AR at 29 (referencing AR at 427-34).  On August 28, 2020, venous varicose competency ultrasound showed venous valvular incompetence in the common femoral and great saphenous, calf to the saphenofemoral junction veins, *id*. (referencing 435), but Dr. Toor

found no edema or significant varicosities, AR at 526, 553, which is consistent with the fact that only conservative management, including rest, elevation, cool compresses, anti-inflammatory medication, and compression stocking therapy, was recommended for Plaintiff's varicose veins.  AR at 439-40, 457.

With regard to Plaintiff's knee osteoarthritis, the ALJ considered that on April 20, 2021, an MRI of Plaintiff left knee showed possible mild sprain of the medial collateral ligament (a key stabilizer on the inner knee connecting the femur to the tibia), tear of the body and posterior horn of the medial meniscus (damage to the inner, back portion of the knee cartilage), large chondral defect of the left tibial plateau (damaged articular cartilage on the shinbone's knee surface, often causing pain, instability, and potential swelling), mild degenerative changes in the medial (inner femur and fibia) and patellofemoral compartments (joint between kneecap and femur), small suprapatellar effusion (accumulation of excess fluid in the suprapatellar bursa (pouch), located just above the knee cap), and small Baker's cyst (fluid-filled swelling behind the knee).  AR at 29 (referencing AR at 448).  Based on the MRI results, on October 21, 2021, Plaintiff underwent left knee arthroscopy surgery with partial medial meniscectomy and chondroplasty with microfracture of the medial femoral condyle (minimally invasive arthroscopy to treat cartilage and meniscus damage).  AR at 30 (referencing AR at 531).  In follow-up to the knee surgery, PA Humbert reported on January 13, 2022, that Plaintiff's left knee was "healing well," Plaintiff had no concerns or complaints, was not in acute distress, had no effusion (build-up of fluid) or erythema (redness, inflammation, and warmth), and Plaintiff was to begin physical therapy.  AR at 30 (referencing AR at 531-32).  The ALJ also considered evidence that following her knee surgery, Plaintiff's

16

joints were "stable," Plaintiff was in no acute distress, retained the ability to ambulate, had no fluid in her left knee, no neurological impairment to movement, and despite her complaints of pain, Plaintiff never followed up with an orthopedist and was noncompliant with physical therapy.  AR at 31 (referencing AR at 553, 558-59, and 567-573).  The ALJ thus showed why his finding with regard to Plaintiff's knee osteoarthritis that Dr. Toor's opinions were "partially persuasive" are supported by and consistent with substantial evidence in the record.

Nor is there any merit to Plaintiff's argument that the ALJ's analysis is flawed insofar as the ALJ relies on Plaintiff's activities of daily living in rejecting Plaintiff's subjective complaints.  Plaintiff's Memorandum at 10-11.  "In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry."  *Christina J. v. Comm'r of Soc. Sec.*, 695 F.Supp.3d 357, 362 (W.D.N.Y. 2023) (citing *Meadors v. Astrue*, 370 Fed.Appx. 179, 183 (2d Cir. 2010)). "'First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" her symptoms.  *Id*. at 362-63 (quoting *Meadors*, 370 Fed.Appx. at 183 (quoting 20 C.F.R. § 404.1529(c)(1))).  "'Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" *Id*. at 363 (quoting *Meadors*, 370 Fed.Appx. at 183, and citing *Mary C. o/b/o Kimberly C. v. Comm'r of Soc. Sec.*, 2023 WL 4699921, at *4 (W.D.N.Y. July 24, 2023) (describing two-step inquiry for evaluating a claimant's credibility)).

Here, the ALJ determined that Plaintiff's medically determinable impairments, including degenerative disc disease, varicose veins, and osteoarthritis of the left hip and knees, could be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's subjective complaints regarding such symptoms were not entirely consistent with the medical and other evidence in the administrative record.  AR at 28-32.  In particular, the ALJ observed that Plaintiff testified to having knee surgery, but stated that because of her arthritis, "she could barely move sometimes," and cannot bend or lift, cannot move her waist, hips, or knees because of pain, her condition did not improve following the knee surgery, medication does not help, Plaintiff can only sit for five minutes before having to stand for ten minutes, and that Plaintiff needs to alternate between sitting and standing.  AR at 29 (referencing AR at 48-49, 51).  In determining that Plaintiff's subjective complaints are inconsistent with the record, the ALJ pointed to objective evidence including diagnostic imaging of Plaintiff's lumbar spine, hips, and knees showing only mild findings, AR at 29 (referencing AR at 429, 433, 426), as well as that treatment records following Plaintiff's knee surgery to repair a ligament tear in Plaintiff's left knee indicated Plaintiff was "healing well."  AR at 29-30 (referencing AR at 448, 531-32).  The ALJ also considered that on examinations following Plaintiff's left knee surgery, Plaintiff, despite reporting some pain, was in no acute distress, there was no fluid on Plaintiff's left knee, no neurological impairment to movement, and Plaintiff did not follow up with orthopedics.  AR at 31 (referencing AR at 553, 558-59).  The ALJ further observed that following both of his consultative examinations of Plaintiff, Dr. Toor described Plaintiff's varicose veins as "mild," and that Plaintiff exhibited no swelling of her leg.  *Id*. at 30 (citing AR at 526, 553).  The ALJ observed that treatment notes

establish Plaintiff had both normal and abnormal physical examinations, including treatment notes documenting Plaintiff had an antalgic gait (limp), left knee stiffness, and limited ROM due to pain in the left knee causing limitations, AR at 31 (referencing AR at 552-53 (Dr. Toor on March 31, 2022), 559 (PA Humbert on June 22, 2022), and 574 (PA Humbert on October 24, 2022)), in contrast to other examination findings by PA Humbert showed normal strength, tone, reflexes, neurological functioning, and ability to ambulate that do not support Plaintiff's complaints to the extent alleged. *Id*. at 29-31 (referencing AR at 532 (January 13, 2022), 533-34 (August 30, 2021), 536 (June 9, 2021), 538 (May 17, 2021), 542 (PA Humbert on April 5, 2021), 559 (June 22, 2022), 565 (August 2, 2022), and 574 (October 24, 2022). Despite the contradicting evidence, it is for the ALJ to resolve "[g]enuine conflicts in the medical evidence" of record. *See Veino v. Barnhart*, 312 F.3d 578. 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve." (citing *Richardson v. Perales,* 402 U.S. 389, 399 (1971)).

The ALJ also relied on Plaintiff's failure to follow through with prescribed treatment including physical therapy and consultation with an orthopedic to whom PA Humbert referred Plaintiff. AR at 31 (referencing AR at 557, 572-74). Specifically, Plaintiff was twice referred for physical therapy ("PT") for her left knee, but each time only attended two sessions and was discharged for failing to attend. AR at 31 (referencing AR at 557, 567-72). Plaintiff's progression with PT was considered limited by pain and poor attendance. *Id*. at 572. Although Plaintiff claimed she never received the referral to the orthopedic, PA Humbert re-sent the referral by facsimile machine to

WNY Orthopedics and advised Plaintiff the referral was still active and that Plaintiff

needed to call and schedule a consultation.  AR at 574.

It is well-settled that an ALJ may consider a plaintiff's failure to comply with

prescribed treatment in considering whether the plaintiff's allegations of intensity and

persistence of symptoms are supported by the record.  *See Jaxx G. v. Comm'r of Soc.*

*Sec.*, 2021 WL 568201, at * 5 (W.D.N.Y. Feb. 16, 2021) (citing *Nicholson v. Colvin*,

2015 WL 1643272, at *7 (N.D.N.Y. April 13, 2015) (determining the ALJ properly

considered the plaintiff's failure to comply with medical treatment as a factor weighing

against her credibility), and SSR 16-3p,[13] 2017 WL 5180304, at *9 (SSA Oct. 25, 2017)

("[I]f the frequency or extent of the treatment sought by an individual is not comparable

with the degree of the individual's subjective complaints, or if the individual fails to follow

prescribed treatment that might improve symptoms, we may find the alleged intensity

and persistence of an individual's symptoms are inconsistent with the overall evidence

of record.  We will not find an individual's symptoms inconsistent with the evidence in

the record on this basis without considering possible reasons he or she may not comply

with treatment or seek treatment consistent with the degree of his or her complaints.")).

The ALJ's further consideration of Plaintiff's activities of daily living in assessing the

consistency of Plaintiff's allegations of subjective complaints with the record, including

that Plaintiff lived alone, cared for her grandchildren, used public transportation,

shopped in stores, cooked, watched television, and was able to perform most personal

---

[13] "SSR" is an acronym for "Social Security Ruling."  Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

care activities without difficulty, AR at 30, 31-32, also was proper.  *See Cherry v. Comm'r of Soc. Sec. Admin*., 813 Fed.Appx. 658, 661-62 (2d Cir. 2020) (holding the ALJ "properly took into account [the plaintiff's] reported activities of daily living, as required by the regulations." (citing 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i), and *Cichocki v. Astrue*, 729 F.3d 172, 78 (2d Cir. 2013) (approving the ALJ's reliance on the claimant's daily activities questionnaire).

Furthermore, as to Plaintiff's argument, Plaintiff's Memorandum at 7-8, that the ALJ improperly "cherry-picked" evidence from the record to support the RFC determination, such argument "boils down to a disagreement with the ALJ's weighing of the evidence, and it is 'not the function of this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled.'"  *Justin C. v. Comm'r of Soc. Sec.*, 2026 WL 369091, at *6 (W.D.N.Y. Feb. 10, 2026) (quoting *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) (quoting *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."), and citing *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) ("an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence").

To summarize, in the instant case, the evidence in the record establishes at most that it is susceptible to more than one rational interpretation, including the ALJ's

decision that Plaintiff is not disabled under the Act.  *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."); *Bonet ex rel.  T.B.*, 523 Fed.Appx. at 58-59 ("Under this 'very deferential standard of review [applicable to actions challenging an administrative decision on a disability benefits claim],' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" (quoting *Brault*, 683 F.3d at 448 (italics in original).  For the reasons discussed above, the court cannot find that the record as a whole requires it to determine that a reasonable factfinder would be required to conclude otherwise than as did the ALJ.  Further, the Supreme Court recently reaffirmed that the threshold for substantial evidence "is not high . . . .  It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __; 139 S.Ct. 1148,  1154 (2019) (internal citation and quotation marks omitted).  Indeed, as noted, see Discussion, *supra*, at 9, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel.  T.B.*, 523 Fed.Appx. at 59 (quoting *Brault*, 683 F.3d at 448) (italics in original).

    Accordingly, the ALJ's decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's

Motion (Dkt. 16) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 19, 2026
            Buffalo, New York